Cherche Prezeau
Colin Phelps
Christensen & Prezeau, PLLP
24 West 6th Ave, Suite 501
Helena, MT 59601
ph. 406-442-3690
fax 406-603-4008
cherche@cplawmt.com
colin@cplawmt.com
*Attorneys for Plaintiff*
*Yellowstone Electric Co.*

John M. Mastin, Jr.*
Parker A. Lewton*
Smith, Currie & Hancock LLP
Suite 2700, Marquis One Tower
245 Peachtree Center Ave NE
Atlanta, GA 30303-1227
ph. 404-521-3800
fax 404-688-0671
jmmastin@smithcurrie.com
palewton@smithcurrie.com
*Attorneys for Plaintiff*
*Yellowstone Electric Co.*

*\*pro hac vice forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| YELLOWSTONE ELECTRIC CO., <br><br> Plaintiff, <br><br> v. <br><br> CROSSHARBOR CAPITAL PARTNERS LLC, LONE MOUNTAIN LAND COMPANY LLC, and SP HOTEL OWNER LLC, <br><br> Defendants. | Case No. CV-22-52-BU-BMM-JTJ <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff Yellowstone Electric Co. ("Yellowstone") files this Complaint

against Defendants CrossHarbor Capital Partners LLC ("CrossHarbor"), Lone

Mountain Land Company LLC ("Lone Mountain"), and SP Hotel Owner LLC

("SP Hotel") (collectively, "Defendants"), and alleges as follows:

## Nature of the Action

1.      This case arises out of the development, design, and construction of the Spanish Peaks Lodge Montage Big Sky Resort—a $416 million, 520,000 square foot, ultra-luxury resort project in Big Sky, Montana (the "Resort"). The Resort includes hotel guestrooms, suites, condominium residences, spa, fitness center, bowling alley, restaurant, lounges, ballroom, meeting rooms, parking, storage, and mechanical and electrical rooms.

2.      Yellowstone provided electrical construction services, labor, and materials for the construction of the Resort.

3.      Yellowstone has not been paid in full for the services, labor, or materials it provided for the construction of the Resort.

4.      Defendants have not paid for the services, labor, and materials that Yellowstone has provided and have thus been unjustly enriched thereby.

5.      Yellowstone's damages greatly exceed $75,000, excluding interest and costs.

6.      Yellowstone asserts claims against Defendants for unjust enrichment, negligence, and negligent misrepresentation. Yellowstone also seeks recovery of prejudgment and post-judgment interest, attorney fees, and costs as permitted by law or equity.

**Parties**

7.    Plaintiff Yellowstone is a Montana corporation with its principal place of business in Billings, Montana. Yellowstone was started in 1937 and has been continuously providing electrical construction services for 85 years. Yellowstone was the electrical construction subcontractor for the construction of the Resort.

8.    Defendant CrossHarbor is a limited liability company organized and existing under the laws of Delaware. Based on reviews of publicly available information and upon information and belief, no member of CrossHarbor is a citizen of Montana. CrossHarbor is a Boston-based, billion-dollar, privately owned investment and asset management company focused on commercial real estate in the United States. CrossHarbor is managing the investment and development of the Resort. CrossHarbor's principal office is at One Boston Place, Suite 2310, Boston, Massachusetts.

9.    Defendant Lone Mountain is a limited liability company organized and existing under the laws of Delaware. Based on reviews of publicly available information and upon information and belief, no member of Lone Mountain is a citizen of Montana. CrossHarbor formed Lone Mountain to manage the planning, entitlement, building, marketing, and sale of premier real estate communities in Montana, including the Resort. Lone Mountain shares CrossHarbor's address of One Boston Place, Suite 2310, Boston, Massachusetts.

10.     Defendant SP Hotel is a limited liability company organized and existing under the laws of Delaware. Based on reviews of publicly available information and upon information and belief, no member of SP Hotel is a citizen of Montana. SP Hotel is one of the owners of the real property on which the Resort is located. SP Hotel's designated representative on the Resort is a Lone Mountain executive. SP Hotel shares CrossHarbor's address of One Boston Place, Suite 2310, Boston, Massachusetts.

11.     Based on Yellowstone's reviews of Montana Secretary of State Business Entity Reports, Massachusetts Secretary of State Corporations Division Business Entity Summaries, Delaware Department of State Division of Corporations Filings, Westlaw Edge Company Investigator Reports, and upon information and belief, there is complete diversity of citizenship because Defendants' limited-liability companies' members are all citizens of states other than Montana, the state in which Yellowstone is incorporated and has its principal place of business. *See Carolina Casualty Insurance Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1088 (9th Cir. 2014) (holding that plaintiff is permitted to plead jurisdictional allegations upon information and belief when citizenship details are not reasonably available).

12.    Additional detailed information regarding the members of Defendants' limited-liability companies is within the knowledge of Defendants but not Yellowstone.

## Jurisdiction and Venue

13.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Yellowstone and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000, excluding interest and costs.

14.    This Court has personal jurisdiction over the Defendants because each defendant has some interest or involvement with the ownership, strategy, investment, development, management, design, construction, or oversight of the Resort. Defendants have therefore transacted business within Montana and/or have an interest in property in Montana within the meaning of Montana's long-arm statute. The exercise of jurisdiction over the Defendants will not violate due process because Yellowstone's causes of action are related to the Defendants' purposeful contacts with Montana, and the Defendants reasonably should have anticipated defending suit in this Court.

15.    SP Hotel is one of the owners of the real property on which the Resort is located.

16.     SP Hotel has a Montana registered agent at 3011 American Way, Missoula, Montana 59808.

17.     SP Hotel has no employees of its own and instead functions solely as a vehicle through which Lone Mountain and CrossHarbor operate.

18.     Lone Mountain, in addition to sharing CrossHarbor's Boston address, also maintains a Montana address at 25 Town Center Avenue, PO Box 160040, Big Sky, Montana 59716, and Lone Mountain maintains a Montana phone number of (406) 995-6333.

19.     Lone Mountain has a Montana registered agent at 3011 American Way, Missoula, Montana 59808.

20.     Lone Mountain advertises several Montana-based projects on its website, including the Resort.

21.     Lone Mountain provides access through its website to real estate listings in the Spanish Peaks Mountain Club.

22.     Lone Mountain's Senior Vice President of Design and Construction, Jack Donovan, was named as the Owner's Designated Representative on the Resort.

23.     Lone Mountain's employees regularly went to the project site and directed activities and personally transacted business on site in Montana.

- 7 -

24.    Lone Mountain has employees, such as Eric Christensen and Ben Tucker, who work in Montana full-time.

25.    Lone Mountain advertises on its website that Eric Christensen oversees the planning and development of the Resort.

26.    Lone Mountain advertises on its website that Ben Tucker is "responsible for the coordination, execution and quality of construction activities" on the Resort.

27.    CrossHarbor advertised in a September 17, 2018 press release that it was announcing the groundbreaking of the Resort on which "CrossHarbor is the principal owner."

28.    CrossHarbor's Managing Director, Matthew E. Kidd, attended the Resort's groundbreaking in person in Montana and has been on site personally transacting business.

29.    CrossHarbor's Co-Founder and Managing Partner, Samuel T. Byrne, attended the Resort's groundbreaking in person in Montana and promised at that groundbreaking to "put our dollars and our money where our mouth is."

30.    Mr. Kidd served as CrossHarbor's representative at Big Sky town hall meetings where he talked about how CrossHarbor was transacting business on various construction projects in Montana, including the Resort.

31.    CrossHarbor uses, and benefits from, the Resort in its marketing and advertising.

32.    Defendants had sufficient contacts with Montana to support the exercise of specific personal jurisdiction under Montana's long-arm statute.

33.    Defendants purposely availed themselves to the benefits and protections of Montana's laws.

34.    Defendants conducted substantial business activity in Montana from which Yellowstone's claim arises.

35.    This case arises out of or results from Defendants' forum-related activities.

36.    Defendants own, use, or possess property, or other interests, in Montana.

37.    Because of Defendants' contacts with Montana, the assertion of jurisdiction does not offend the traditional notions of fair play and substantial justice.

38.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the actions or omissions giving rise to Yellowstone's claims occurred in this District, and the property that is the subject of this action is situated in this District. Venue is proper in this Division because the Resort is located in this division, and the claims arose in this Division.

## General Allegations

39.    Yellowstone provided electrical construction services, labor, and materials for the construction of the Resort.

40.    As the principal owner, CrossHarbor owns, controls, and acts through SP Hotel and Lone Mountain.

41.    Lone Mountain's Senior Vice President of Design and Construction acted as SP Hotel's Designated Representative on the Resort.

42.    Defendants provided the construction plans and specifications for the Resort.

43.    Defendants had an obligation to provide accurate construction plans and specifications for the Resort.

44.    The plans provided by Defendants were not accurate and adequate to build the Resort, which resulted in thousands of changes throughout the course of construction.

45.    The plans furnished by Defendants were defective because they were incomplete, inadequate, uncoordinated, or otherwise insufficient to properly build the Resort. Examples of the defective plans include, but are not limited to, the following:

　　　　a.    Electrical Drawing Nos. E2.B2.1 and E6.20 Equipment

　　　　　　Schedule and Panel Schedules E6.15–E61.8 were inaccurate or

incomplete because they did not show electrical branch circuit wiring for the generator fuel oil system ancillary equipment. This omission resulted in Yellowstone performing extra work for which it has not been paid.

b.   Electrical Drawing Nos. E2.B2.2, E2.B2.1 and E6.20 Equipment Schedule and Panel Schedules E6.15–E61.8 were inaccurate or incomplete because they did not show electrical branch circuit wiring for heating water, chilled water, cooling tower, and hydronic snowmelt systems. This omission resulted in Yellowstone performing extra work for which it has not been paid.

c.   Electrical Drawing Nos. LCP2.1.4, E6.1.4: RCP, and E9.02: Lighting Controls were inaccurate or incomplete because they did not show adequate lighting circuity for the ballroom chandeliers. This omission resulted in Yellowstone performing extra work for which it has not been paid.

d.   Electrical Drawing No. E2.B2.1 and Panel Schedules E6.15– E6.18 were inaccurate or incomplete because they did not show branch circuit wiring for the refrigerant monitoring system.

This omission resulted in Yellowstone performing extra work for which it has not been paid.

46.     The defective plans resulted in more than 2,230 requests for information (RFIs).

47.     The defective plans resulted in numerous Supplemental Instructions (SIs), which changed the design.

48.     The defective plans resulted in more than 680 electrical change orders.

49.     The number of RFIs, SIs, and change orders was excessive and greatly increased the scope and cost of Yellowstone's work, as well as the timeline for the completion of such work.

50.     Yellowstone justifiably relied on the plans Defendants provided and has been damaged because the plans were defective.

51.     Defendants' defective plans caused a cumulative impact—a ripple effect of changes on unchanged work.

52.     Defendants' defective plans converted Yellowstone's work from the planned sequential linear progression to a series of concurrent, long duration, intermittent work activities.

53.     Defendants' defective plans caused Yellowstone to perform extra work for which it has not been paid.

54.    At the Explore Big Sky Virtual Town Hall on April 20, 2020, Matthew E. Kidd, CrossHarbor Managing Director, stated that construction was an essential business and thus construction at the Resort had to proceed despite the COVID-19 pandemic.

55.    Mr. Kidd advised that the Defendants adopted significant changes to the Resort construction project because of COVID-19, including applying social distancing, eliminating busing of construction workers, using temperature testing, and contact tracing.

56.    Mr. Kidd acknowledged that COVID-19 and the related changes caused significant slowdowns in work on the Resort construction project, which initially resulted in construction labor productivity of 20% or less.

57.    Mr. Kidd stated that construction labor productivity eventually recovered to about 75–80% of normal.

58.    Mr. Kidd stated that it was a fact that, because of COVID-19, projects would take longer and likely cost more to build.

59.    Upon information and belief, at least 116 workers on the Resort construction project tested positive for COVID-19.

60.    The effects of the COVID-19 pandemic were significant and far reaching, affecting nearly every aspect of Yellowstone's work on the Resort construction project.

61.     Yellowstone's work on the Resort project was delayed by COVID-19, and its labor productivity on the Resort project was significantly reduced.

62.     Yellowstone suffered loss of production on the Resort project because of Defendants' pandemic mitigation activities.

63.     Yellowstone suffered from direct loss-of-productivity damages caused by COVID-19.

64.     Although Defendants acknowledged that COVID-19 and the associated mitigation measures would result in a loss of productivity and project delay, Defendants failed or refused to account for such delays or to adequately compensate Yellowstone for its extended schedule resulting from such delays.

65.     Upon information and belief, CrossHarbor, Lone Mountain, and SP Hotel worked together as a team to make decisions related to providing the construction plans and specifications, COVID-19 mitigation measures, and other important matters at the Resort.

## Causes of Action

### Count One – Unjust Enrichment
### Against all Defendants

66.     Yellowstone incorporates by reference paragraphs 1–65 as if fully set forth herein.

67.     Yellowstone conferred a benefit upon Defendants—electrical construction services, labor, and materials for the Resort—without which the Resort could not open or operate.

68.     Defendants knew about or appreciated the benefit of Yellowstone's work.

69.     Defendants accepted or retained the benefit of Yellowstone's work under circumstances rendering it inequitable for Defendants to do so.

70.     It is not fair or just for Defendants to enjoy the benefit of Yellowstone's electrical work but not pay for the work.

71.     Yellowstone reasonably expected to be paid for the electrical construction services, labor, and materials it provided for the Resort.

72.     There was no contract between Yellowstone and Defendants.

73.     This is an equitable claim for restitution.

74.     The measure of this equitable restitution interest is either the quantum meruit value of Yellowstone's labor and materials or the value of the enhancement to Defendants' property.

75.     All conditions precedent to the bringing of this claim and to the recovery of the damages and other relief sought have been satisfied, waived, excused, or otherwise discharged.

## Count Two – Negligence
## Against all Defendants

76.     Yellowstone incorporates by reference paragraphs 1–65 as if fully set forth herein.

77.     Defendants had a duty to provide accurate plans and specifications for the Resort construction project.

78.     Defendants breached their duty by furnishing construction plans that were defective because the plans were incomplete, inadequate, uncoordinated, or otherwise insufficient to properly build the Resort.

79.     Defendants failed to use reasonable care by providing defective plans on the Resort construction project.

80.     Defendants could reasonably foresee that construction contractors and subcontractors—such as Yellowstone—would be injured or damaged if Defendants failed to exercise ordinary care in providing accurate construction plans.

81.     Defendants' defective plans caused Yellowstone's damages because the defective plans adversely impacted Yellowstone's labor productivity on the Resort construction project, which caused Yellowstone to incur additional costs.

82.     Defendants' defective plans caused Yellowstone's damages because the defective plans had a cumulative impact of change orders and changes on the Resort construction project.

83.    Defendants' breach of duty directly and proximately caused Yellowstone's damages, in an amount to be proven at trial.

84.    All conditions precedent to the bringing of this claim and to the recovery of the damages and other relief sought have been satisfied, waived, excused, or otherwise discharged.

**Count Three – Negligent Misrepresentation**
**Against all Defendants**

85.    Yellowstone incorporates by reference paragraphs 1–65 as if fully set forth herein.

86.    Defendants represented that the construction plans were accurate and adequate to build the Resort.

87.    Defendants' representation was untrue because the plans were inaccurate, inadequate, incomplete, uncoordinated, or otherwise insufficient to properly build the Resort.

88.    Defendants made the representation without any reasonable ground for believing it to be true.

89.    Defendants' representation was made with the intent to induce contractors and subcontractors—such as Yellowstone—to rely upon the representation.

90.    Yellowstone was unaware of the falsity of the representation and was justified in relying on it.

91.     Yellowstone sustained damages, in an amount to be proven at trial, as a result of its reliance on the Defendants' representation that the construction plans were accurate and adequate.

92.     All conditions precedent to the bringing of this claim and to the recovery of the damages and other relief sought have been satisfied, waived, excused, or otherwise discharged.

## Prayer for Relief

**WHEREFORE**, Yellowstone respectfully requests the following relief:

A.     Judgment in Plaintiff Yellowstone's favor and against Defendants CrossHarbor, Lone Mountain, and SP Hotel on all causes of action alleged herein in an amount to be proven at trial;

B.     An award to Yellowstone for damages in an amount to be proven at trial;

C.     An award to Yellowstone of costs of suit incurred herein;

D.     An award to Yellowstone of prejudgment and post-judgment interest, as permitted by law;

E.     An award to Yellowstone of its reasonable attorney fees and costs, as permitted by law or equity; and

F.     An award to Yellowstone of such other and further relief as the Court deems just and proper.

## Demand for Jury Trial

Under Federal Rule of Civil Procedure 38, Yellowstone demands a jury trial

for all claims and issues so triable.

Dated: July 25, 2022                    Respectfully submitted,

/s/ *Cherche Prezeau*
Cherche Prezeau
Attorney for Plaintiff
Yellowstone Electric Co.
on behalf of all Attorneys for Plaintiff
