IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| YELLOWSTONE ELECTRIC CO., <br><br> Plaintiff, <br><br> vs. <br><br> CROSSHARBOR CAPITAL PARTNERS LLC; LONE MOUNTAIN LAND COMPANY LLC; and SP HOTEL OWNER LLC, <br><br> Defendants. | CV 22–52–BU–DLC <br><br><br> ORDER |

Before the Court is Defendants CrossHarbor Capital Partners, LLC, Lone Mountain Land Company, LLC, and SP Hotel Owner, LLC's Motion to Dismiss. (Doc. 18.) Defendants seek dismissal of Plaintiff Yellowstone Electric Company's ("Yellowstone") Complaint (Doc. 1) pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure. (Doc. 18 at 2.) A hearing on the motions was held on February 3, 2023. (*See* Doc. 25.) For the reasons discussed below, the Court grants the motion.

## Background

This action arises out of the development and construction of the Spanish Peaks Lodge Montage Big Sky Resort (the "Resort" or the "Project") in Big Sky, Montana. (Doc. 1 at 2.) Yellowstone was subcontracted by Suffolk Construction

1

Company, Inc. ("Suffolk") to "provided electrical construction services, labor, and materials" on the Project.  (*Id.*; *see also* Doc. 19-1.)  Yellowstone claims that CrossHarbor Capital manages "the investment and development of the Resort," (Doc. 1 at 3, ¶ 8), Lone Mountain manages "the planning, entitlement, building, marketing, and sale of . . . the Resort," (*id.* ¶ 9), and SP Hotel "is one of the owners of the real property on which the Resort is located," (*id.* at 4, ¶ 10).

Yellowstone asserts claims against Defendants for "unjust enrichment, negligence, and negligent misrepresentation." (*Id.* at 2, ¶ 6.)  First, Yellowstone alleges that Defendants failed to pay for services, labor, and materials provided by Yellowstone during the Resort's construction.  (*Id.* at 14.)  Second, Yellowstone alleges that Defendants' "defective plans . . . adversely impacted Yellowstone's labor productivity on the Resort construction project," causing Yellowstone "to incur additional costs." (*Id.* at 15, ¶ 81.)  Finally, Yellowstone also alleges damages "as a result of its reliance on the Defendants' representation that the construction plans were accurate and adequate." (*Id.* at 17, ¶ 91.)

The contract between Suffolk and Yellowstone (the "Subcontract") outlines the rights and duties between the two signatories as they relate to the Project. Suffolk agreed to pay Yellowstone for "all work, labor, materials, equipment, taxes, fees and all other matters or amounts arising out of or to be performed or furnished by [Yellowstone]" on the Project, as described in the Subcontract (the

"Work"). (Doc. 19-1 at 13 (arts. 3, 4).)

Article 1 recognizes that the Project's plans "may be amended from time-to-time (as defined in the Subcontract)," (*id.* at 12), and Article 2 also recognizes that adjustments to the work schedule may be authorized, *(id.* at 13). Article 8, § 8.6.1 outlines Suffolk's right to make changes, including:

> (i) changes in the scope of the Work . . . ; (ii) changes in the Work (including deletions of portions of the Work) ordered by [Suffolk]; or (iii) changes in the Work which occur as a result of [Yellowstone]'s default in the performance of its obligations under this Subcontract.

(*Id.* at 17.) Article 8, § 8.13 further provides:

> All changes to this Subcontract and all changes in the scope of the Work, except those resulting from [Yellowstone]'s default in the performance of its obligations under this Subcontract, shall be confirmed in a writing signed by [Suffolk] and [Yellowstone] after the ordering of such change . . . . Should [Yellowstone] proceed with any additional work without written direction from [Suffolk] in accordance with the terms and conditions of this Subcontract, [Yellowstone] does so at its own risk and expense. If [Suffolk] and [Yellowstone] are unable to agree on [Yellowstone]'s entitlement to a time extension or an adjustment to the Subcontract Amount due to a scope change, [Yellowstone] shall nonetheless proceed immediately with performance of the scope change as provided.

(*Id.* at 22.)

Yellowstone may make claims for additional payment or extensions of time if provided to Suffolk "in writing within ten (10) days (unless a shorter period is specified in the Contract Documents) after the occurrence of the event giving rise to such claim." (*Id.* at 22 (art. 8, § 8.12).) The Subcontract provides Yellowstone

3

a right to money damages for "delay, hindrance, disruption, re-sequencing or inefficiency . . . not caused in whole or in part by the acts or omissions of [Yellowstone] or anyone for whom [Yellowstone] is responsible." (*Id.* at 8 (Rider A, ¶ 6), 15 (art. 6).) Such damages are limited to any "verified direct costs actually incurred by [Yellowstone] resulting from such a delay to the extent that [Suffolk] recovers such costs from Owner or other subcontractor on [Yellowstone]'s behalf." (*Id.*) The Subcontract also contains an arbitration clause, which states:

> *Any claims arising out of this Subcontract, including, without limitation, claims for an adjustment to the Subcontract Amount or Time of performance*, which cannot be resolved by negotiation . . . [and] exceed $50,000.00 or where injunctive relief is sought, shall be submitted to a panel of three arbitrators in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, upon [Suffolk]'s election . . . . The results of any arbitration shall be binding on the parties thereto, and shall be enforceable by court order at the request of either party.

(*Id.* at 23 (art. 8, § 8.16) (emphasis added).)

In their Motion to Dismiss, Defendants argue that the Complaint should be dismissed, pursuant to Rules 12(b)(6) and 12(b)(7), because: (1) Yellowstone failed to join a necessary party, and (2) the Complaint fails to allege facts upon which relief can be granted. (Doc. 18 at 10.) First, Defendants argue that Suffolk is a necessary party whom Yellowstone "strategically chose to omit" due to the arbitration clause contained in the Subcontract. (*Id.*) Second, Defendants argue that Yellowstone "never had any relationship with any of the Defendants that could

4

give rise to the relief it has requested." (*Id.*)

## Discussion

When determining whether to dismiss a complaint under Rule 12(b)(6) or 12(b)(7), the Court "must consider all allegations of material fact as true and construed in a light most favorable to the plaintiff." *N. Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 996 (D. Mont. 2016) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)). Under Rule 12(b)(7), the Court may also consider extrinsic materials attached to the motion.[1] *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *see also Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

### I. Rule 12(b)(7)

A district court may dismiss a complaint pursuant to Rule 12(b)(7) for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). The Court must follow a three-step analysis to determine if dismissal is appropriate. First, the Court must determine if the party is "necessary" pursuant to Rule 19(a). *See Dine Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 851 (9th Cir. 2019); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985). Second, if the Court determines that the nonparty is necessary, it must then determine if joinder of the nonparty is feasible. *See EEOC v. Peabody W. Coal*

---

[1] Here, the Subcontract between Suffolk and Yellowstone was attached to Defendants' motion and therefore may be considered under Rule 12(b)(7).

5

*Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  If joinder is not feasible, the Court must then determine if the party is "indispensable" pursuant to Rule 19(b).  *Id.*  If the Court reaches the final step of the analysis and concludes that the party is indispensable, then the complaint should be dismissed.  *See id.*; FED. R. CIV. P. 19(b).  This analysis is "practical" and "fact specific."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

### 1. Suffolk is a necessary party under Rule 19(a).

A nonparty is "necessary" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>(i) as a practical matter impair or impede the person's ability to protect the interest; or
>(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).  Under Rule 19(a)(1)(B), the nonparty's claimed interest must be legally protected, "more than a financial stake, and more than speculation about a future event."  *Id.*; *see also N. Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 996 (D. Mont. 2016).  "[A]n interest that 'arises from terms in bargained contracts' may be protected, but . . . such an interest [must] be 'substantial.'"  *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 973 (9th Cir. 2008) (quoting *Am. Greyhound Racing, Inc. v. Hull*, 305

6

F.3d 1015, 1023 (9th Cir. 2002)).

Suffolk is a necessary party under Rule 19(a)(1)(B)(i): Suffolk has a substantial interest in the litigation and its interest would, as a practical matter, be impaired if not joined as a party.  Yellowstone's claims ultimately arise out of the Subcontract and Suffolk has a significant, legally protected interest in the bargained for contractual obligations at issue.  As discussed above, the Subcontract defines Yellowstone's scope of work on the Project, right to payment, and right to make claims for additional payment for work performed.  The Subcontract also dictates that such claims for additional payment are to be resolved through arbitration if the parties are not able to resolve them through negotiation.  Suffolk's interest is substantial and would be impaired if not joined as a party because resolution of this case would (1) determine Yellowstone's right to payment under the Subcontract without involving a signatory to the Subcontract and (2) obviate the arbitration clause that was a bargained for element of the contract.  *See Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996) (finding that a nonparty's interest in a "bargained-for" contractual exchange was substantial under Rule 19(a)); *Jacobsen v. Luckenbach Steamship Co.*, 201 F. Supp. 883, 889 (D. Or. 1961) ("Where rights sued upon arise out of contract, all parties thereto are deemed indispensable and should be joined."); *see also Travelers Indem. Co. v. Household Int'l Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) (finding that "precedent supports

the proposition that a contracting party is the paradigm of an indispensable party" (citations omitted)); *Burger King Corp. v. Am. Nat'l Bank of Trust Co. of Chicago*, 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a legally protected interest *in* the subject matter of the action—i.e., he is a party to a contract at issue—he falls squarely within the terms of Rule 19(a)[(1)(B)].").

Yellowstone contends that its claims do not "arise out of" the Subcontract and therefore Suffolk does not have a legally sufficient interest under Rule 19(a). While it is true that Yellowstone's claims are premised in tort, not contract, the Court can look beyond the labels given to claims to determine the true nature of the complaint. *See, e.g.*, *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-cv-02004-ESH, 2008 WL 239581, at *3 (D.D.C. Jan. 30, 2008) (looking beyond the "legal labels" attached to claims to the "gravamen of [the] complaint"); *see also Rebich v. Dept. of Veterans Affs.*, No. CV 21-60-M-DLC-KLD, 2022 WL 18085294, at *2 (D. Mont. Nov. 23, 2022), *report and recommendation* adopted, No. CV 21-60-M-DLC, 2023 WL 1814718 (D. Mont. Feb. 8, 2023) (discussing how the labels assigned to claims do not necessarily align with the nature and gravamen of the complaint). Yellowstone seeks monetary damages for costs incurred due to the scheduling and sequencing of work, changes to the scope of work, and delays. (*See* Doc. 1.) Yellowstone's rights in relation to these issues are found only in the Subcontract with Suffolk. (*See* Doc. 19-1 at 12 (art. 1); 13–14 (arts. 2, 3, 4); 15

(art. 6, art. 8, § 8.2); 17 (art. 8, § 8.6.1); and 22 (art. 8, §§ 8.12, 8.13).) Therefore, these claims arise out of the Subcontract and are inseparable from claims that Yellowstone is required to raise in an arbitration proceeding. (*See id.* at 23 (art. 8, § 8.16)).

Yellowstone also points to the *Spearin* doctrine as a basis under which they may recover from Defendants as opposed to recovering under the Subcontract. (Doc. 31 at 3.) In *United States v. Spearin*, a contractor sought to recover the balance of payments for work already performed under a contract with the United States government and damages for the Government's annulment of the contract. 248 U.S. 132, 133 (1918). The Government had hired the contractor to build a dry dock, which ultimately required the relocation of a sewer. *Id.* The sewer broke and flooded the dock excavation site and the contractor refused to continue construction until the Government assumed responsibility for the damage from the sewer. *Id.* at 134–35. The Government had been aware of the fault which caused the sewer to fail but had not communicated that information to the contractor. *Id.* at 134. The Supreme Court found that "if [a] contractor is bound to build according to plans and specifications prepared by [an] owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." *Id.* at 136 (citations omitted). The court held that the contractor was relieved of its obligation to perform under the contract because the Government had breached the

9

"[implied] warranty that, if the specifications were complied with, the sewer would be adequate." *Id.* at 137. Therefore, "when the Government annulled the contract without justification, it became liable for all damages resulting from its breach." *Id.* at 138.

The Ninth Circuit has explained that this implied warranty also exists between contractors and subcontractors where "contractors impliedly warrant the adequacy of the plans and specifications which they supply and require subcontractors to follow." *L.K. Comstock v. United Eng'rs & Const.*, 880 F.2d 219, 226 (9th Cir. 1989) (citation omitted). In *L.K. Comstock*, a subcontractor raised the *Spearin* doctrine as a defense to alleged breaches of a subcontract between itself and the general contractor after the general contractor cancelled the subcontract, "claiming that [the subcontractor] had failed to use its 'Best Efforts' to complete the work in time to meet the [project] completion date." *Id.* at 220, 226. The district court dismissed the subcontractor's *Spearin* defense because it "did not find that the delays resulting in termination of the contract [by the general contractor] were caused by faulty plans or specifications" and the Ninth Circuit affirmed this decision. *Id.* at 226–27.

Montana courts have also recognized that an implied warranty exists for plans and specifications in construction contracts. In *Sornsin Construction Company v. State*, a contractor sued an owner for breach of contract after the

10

owner refused to pay for additional costs the contractor incurred during construction. 590 P.2d 125, 127 (Mont. 1978). The additional costs were the result of site conditions not being as described by the owner. *Id.* The court stated "[i]t has long been recognized that the owner . . . warrants and is responsible for the accuracy of the descriptions in the plans and specifications of the contract that are issued." *Id.* at 129 (citing *Haggart Constr. Co. v. State Highway Comm.*, 427 P.2d 686 (Mont. 1967)). The court held that, despite the general rules of contract law and the terms of the contract at issue, the owner's implied warranty of plan specifications relieved the contractor of liability for the additional costs. *Id.* at 129–30.

In *Lutey Construction-The Craftsman v. State*, a contractor brought several breach of contract claims against an owner, including a claim for "breach[] of the implied warranty of suitability and accuracy in the contract." 851 P.2d 1037, 1040 (Mont. 1993). The court acknowledged that "the law in Montana establishes 'that a contractor can rely on the plans and specifications and need not . . . verify them . . . . [T]he owner . . . warrants and is responsible for the accuracy of the descriptions in the plans and specifications.'" *Id.* (citing *Sornsin*, 590 P.2d at 129). The court concluded that "[t]he *contract* impliedly warrants that the plans and specification are suitable and accurate" and therefore "the implied warranty action *arises out of the contract* and is treated as part of the contract." *Id.* (emphasis

11

added).

From these cases it is clear that Yellowstone's reliance on *Spearin* and its progeny is misplaced for two reasons. First and foremost, the *Spearin* doctrine provides either a *defense* to liability or a basis for a *breach of contract* claim, not a right to recover in tort. Second, the *Spearin* doctrine is inapplicable where the party being sued is not in privity of contract with the party bringing suit. Yellowstone has not cited any cases where a subcontractor has brought a tort claim against an owner, with whom they were not in privity, based on the *Spearin* doctrine, and the Court is aware of none.

Yellowstone also contends that Defendants can adequately protect Suffolk's interest because Suffolk's and Defendants' interests are aligned and each are represented by the same counsel. (Doc. 22 at 18.) The Court does not agree with Yellowstone's argument on this point. "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013). However, Suffolk and Defendants do not have identical interests and therefore Defendants do not serve as an adequate proxy. Even assuming that both Defendants and Suffolk are aligned in thinking that Yellowstone is not entitled to additional compensation, this is not sufficient. As discussed above, the claims arise out of the Subcontract between Suffolk and

Yellowstone, to which Defendants are not a party; and as a non-signatory Defendants cannot be said to have the same interest as the parties who bargained for and agreed upon the terms of the contract.

Therefore, the Court finds that Suffolk is a necessary party under Rule 19(a).

### 2. It is not feasible to join Suffolk.

As just discussed, each of Yellowstone's claims, regardless of the label given to them, involve rights and obligations arising out of the Subcontract and all of these claims are required to be raised in arbitration. Suffolk has not waived its right to arbitration, (Doc. 19 at 20), and, although it is not *certain* that Suffolk would choose to compel arbitration if joined, application of Rule 19(a) requires this Court to "forecast the future course of this litigation" and respond accordingly. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014). Moreover, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157–58 (9th Cir. 2013); *see also Stamp v. Gen. Elec. Cap. Corp.*, No. CV 12-123-BLG-DLC, 2013 WL 5755686, at *3 (D. Mont. Oct 23, 2013).

Other courts have also held that the existence of an arbitration clause makes joinder of a necessary nonparty who could enforce that arbitration clause infeasible. *See, e.g.*, *Corsi*, 2008 WL 239581, at *5 (dismissing claims pursuant to

13

Rule 12(b)(7) because an arbitration clause made joinder of a necessary nonparty infeasible); *LST Finc., Inc. v. Four Oaks Fincorp, Inc.*, No. SA-14-CV-435-XR, 2014 WL 3672982 at *4 (W.D. Tex. July 24, 2014) (citing a mandatory arbitration clause as a basis to determine that joinder is not feasible); *Parziale v. Nelson*, 2021 WL 4272666, at *3 (C.D. Cal. Sept. 17, 2021) (finding joinder infeasible where nonparty is subject to a binding arbitration provision with the plaintiff).

Accordingly, this Court finds that it is not feasible to join Suffolk as a party to this action.

### 3. Suffolk is an indispensable party.

A nonparty is indispensable if "in equity and good conscience" the action could not proceed among the existing parties alone. FED. R. CIV. P. 19(b). To make this determination, the Court balances four factors: "(1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Kescoli*, 101 F.3d at 1310.

Here, arbitration is available as an alternative forum for Yellowstone to seek relief and, therefore, there is no prejudice to Yellowstone if this matter is dismissed. Although Yellowstone argues that arbitration is an illusory remedy, the Court need not, and should not, address whether the claims Yellowstone raises can

actually be brought successfully through arbitration. Such determination is left to the arbiter per the terms of the arbitration agreement.[2] Yellowstone also argues that it "has not agreed or consented to arbitrate its tort claims against Defendants, and [it] should not be coerced or forced into arbitration." (Doc. 31 at 6.) This argument is unavailing for the reasons already discussed. Yellowstone's claims for additional payment for the unexpected costs it incurred on the project are the exact type of claims that are covered by the Subcontract's arbitration clause. Thus, Yellowstone did consent to have such claims resolved through arbitration.

Addressing the remaining two factors, relief cannot be shaped to lessen prejudice, nor can an adequate remedy be awarded without Suffolk, because the relief sought is directly tied to the amount Yellowstone claims it is entitled under the Subcontract. Any recovery from Defendants would be derivative of the amount Yellowstone may pursue from Suffolk in arbitration.

Defendants note that "some district courts have opted to stay the federal proceedings, rather than dismiss them, pending resolution of arbitration." (Doc. 19 at 21 (citing *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, No. LA CV15-08048, 2016 WL 7444857, at *14 (C.D. Cal. July 29, 2016); *WDCD, LLC v.*

---

[2] Article 8, § 8.16, of the Subcontract—the arbitration clause—states that the Construction Industry Arbitration Rules of the American Arbitration Association ("CIA Rules") shall control for claims arising out of the Subcontract which exceed $50,000. (Doc. 19-1 at 23.) Rule 9(a) of the CIA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AM. ARB. ASSOC., CONSTRUCTION INDUSTRY ARBITRATION RULES AND MEDIATION PROCEDURES 18 (July 1, 2015).

*iStar, Inc.*, No. CV 17-00301-DKW-RLP, 2017 WL 5505395, at *2 (D. Haw. Nov. 16, 2017)).)  However, Defendants' approach to raising this issue does not allow the Court to stay the proceedings.  In order to do so, Defendants would have had to specifically request to stay the proceedings through a motion to stay and/or a motion to compel arbitration, neither of which are before the Court.  9 U.S.C. § 3 (stating that the district court may stay a proceeding pending arbitration "upon *application* of one of the parties" (emphasis added)); *see also Hilton v. Midland Funding, LLC*, 867 Fed. Appx. 515, 519 (6th Cir. 2017) ("Vague references to a stay do not constitute a request for a stay."); *Tradeline*, 2016 WL 7444857, at *1 (staying the action pending arbitration where the defendant *moved to compel arbitration and stay the proceeding* or, in the alternative, dismiss pursuant to Rule 12(b)(7)); *WDCD*, 2017 WL 5505395, at *1 (staying the action where the defendant *moved to stay litigation* under 9 U.S.C. § 3 or, in the alternative, dismiss pursuant to Rules 12(b)(6) and 12(b)(7)).

Accordingly, the Court finds that dismissal is warranted under Rule 12(b)(7).

**II. Rule 12(b)(6)**

Because the Court finds that dismissal is warranted under Rule 12(b)(7), dismissal under Rule 12(b)(6) need not be addressed.

Accordingly, IT IS ORDERED that the motion (Doc. 18) is GRANTED, and

the case is DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(7).

DATED this 9th day of March, 2023.

_____
Dana L. Christensen, District Judge
United States District Court